OPINION
{¶ 1} Defendant, Ronnie Moore, appeals from his conviction and sentence for menacing.
 {¶ 2} Renee White and her children live in the upstairs portion of the home owned by her mother, Irma Williams, at 5711 Northford Road in Trotwood, Ohio. Ms. White dated *Page 2 
Defendant from August 2005 until the last week of December 2005. Late in the evening on December 30, 2005, a few days after she broke up with Defendant and had changed her cell phone number, Ms. White looked out the window of her home and observed Defendant's vehicle pulling up to her house. Ms. White went to the door to talk to Defendant.
 {¶ 3} Ms. White and Defendant talked outside. During that conversation Defendant threatened to "gut" Ms. White. She was frightened, and believed that Defendant would harm her. At some point Defendant pushed his way past Ms. White, entered the home, and went upstairs to White's bedroom, where they argued about Defendant not being able to reach White on her cell phone and Defendant's wanting to continue their relationship when White did not.
 {¶ 4} During their argument, Defendant pushed Ms. White onto the bed and started choking her. After Defendant let Ms. White get up, they both went downstairs to the front door, where they continued arguing after Ms. White refused to leave with Defendant. After Ms. White went into the family room and told her mother that Defendant was there and he had tried to choke her, her mother called police. Defendant left before police arrived.
 {¶ 5} Defendant was charged by complaint filed in *Page 3 
Montgomery County Area One Court with one count of assault, R.C.2903.13(A), and one count of menacing, R.C. 2903.22(A). Following a trial to the court, Defendant was found not guilty of assault but guilty of menacing. The trial court sentenced Defendant to one year of community control sanctions.
 {¶ 6} We subsequently granted Defendant leave to file a delayed appeal. Appellee, the State of Ohio, has not filed a brief. Therefore, the provisions in App.R. 18(C) will be applied in this case.
 {¶ 7} FIRST ASSIGNMENT OF ERROR
 {¶ 8} "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 9} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 10} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created *Page 4 
such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,supra.
 {¶ 11} In order to find that a manifest miscarriage occurred, an appellate court must conclude that a guilty verdict is "against," that is, contrary to, the manifest weight of the evidence presented. See,State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level.
 {¶ 12} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 13} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the *Page 5 
factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 14} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 15} Defendant was found guilty of knowingly causing Ms. White to believe that he would cause her physical harm. R.C. 2903.22(A). Defendant argues that Ms. White's conduct demonstrates that she did not fear Defendant and did not believe that Defendant would cause her physical harm, and therefore his conviction for menacing is against the manifest weight of the evidence.
 {¶ 16} Defendant points out that Ms. White willingly met him at the front door, engaged in multiple conversations with him, and steadfastly refused to go with him even though he allegedly threatened to "gut" her, and had also choked her, which the trial court sitting as the trier of facts did not believe. Defendant's argument, however, ignores White's testimony that she was frightened and believed that Defendant would cause her physical harm, as well as testimony by White's mother, Irma Williams, that White was upset and was visibly physically shaking. *Page 6 
 {¶ 17} The trial court, sitting as the trier of facts, did not lose its way in this case simply because it chose to believe the testimony of Ms. White and her mother, Irma Williams, that demonstrated that White was frightened by Defendant and believed that Defendant would harm her. The credibility of the witnesses and the weight to be given to their testimony was for the trier of facts to decide. DeHass. Reviewing the entire record, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction for menacing is not against the manifest weight of the evidence.
 {¶ 18} The assignment of error is overruled. The judgment of the trial court will be affirmed.
 BROGAN, J. And DONOVAN, J., concur. *Page 1